UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

| | |
|---|---|
| SUSAN GALL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 2:13CV111 CDP |
| | ) |
| RUSSELL E. STEELE, et al., | ) |
| | ) |
| Defendants. | ) |

# **MEMORANDUM AND ORDER**

After she was fired by the presiding judge of Missouri's Second Judicial Circuit,[1] former Adair County deputy circuit clerk Susan Gall brought this Section 1983 suit alleging that her procedural due process rights were violated. Gall argues that only the Adair County Circuit Clerk – and not the presiding judge – had authority to fire her. She names as defendants Judge Russell Steele, the former presiding judge who made the decision, and his successor, Judge Kristie Swaim. Judges Steele and Swaim have moved to dismiss. This case raises a controlling question of Missouri law that is unclear, and the decision of the issue by the state courts could avoid the need for a decision on federal constitutional grounds. *Pullman* abstention therefore applies. Rather than dismiss the action, however, I

---

[1] This circuit includes Adair, Knox, and Lewis Counties.

will stay it to give the parties the opportunity to seek a determination of the controlling Missouri issue by the Missouri courts.

## I.     **Background**[2]

Adair County Circuit Clerk Linda Decker hired Gall as a deputy circuit clerk in April 2005.  Years later, on August 20, 2013, Judge Steele, who was then the Presiding Judge of the Second Judicial Circuit Court, served Gall with a letter describing some alleged incidents with her work and finding her conduct in violation of two Missouri Supreme Court Operating Rules.  In the letter, Steele purported to suspend Gall without pay until the following week and notified her of his intent to terminate her employment permanently.  Steele enclosed a copy of the Operating Rule governing termination of employment and pointed out that the Rule permitted Gall to request a pre-termination hearing.

Gall did so, but she directed her hearing request to Circuit Clerk Decker, whom Gall contends was the sole appointing authority permitted under state law to terminate her employment.  On August 28, 2013, the day after Gall's employment ended (according to Steele's letter), Decker conducted the requested hearing.

---

[2] The vast majority of facts are undisputed.  Because abstention is "a prudential rather than a jurisdictional ground for dismissal," the pleading and burden requirements of Rule 12(b)(6) are not applicable, nor is the court "limited to the facts that the plaintiff pleaded to determine whether comity and federalism counsel against [the] exercise of jurisdiction." *Christian Action Network v. Maine*, 679 F. Supp. 2d 140, 143 n.2 (D. Me. 2010); *see also Mo. ex rel. Nixon v. Prudential Health Care Plan, Inc.*, 259 F.3d 949, 953 (8th Cir. 2001).

A week later, on September 4, 2013, Decker e-mailed Gall, summarizing her findings from the hearing. Decker first affirmed that Gall had properly requested a pre-termination hearing in accordance with the governing Supreme Court Operating Rule. Decker concluded that Gall had not violated the Rules that Steele had cited as the basis for her termination. Decker reversed Steele's decision, granted back pay to Gall, and ordered her to report for work the following week. Decker wrote, "According to Missouri Law – neither Judge Steele or his designee, Matt Holt[,] had the authority to terminate or designate your duties or assignments."

The next day, Steele wrote another letter to Gall, countermanding Decker's decision. He informed Gall that it was he and not Decker who had authority to terminate her employment. Steele advised Gall that the pre-termination hearing conducted by Decker was invalid, and he offered her another opportunity to request a hearing from him. Eventually, when Gall did not request a hearing, Steele issued a final dismissal letter formally terminating her employment.

The parties appear to agree that Gall had a protected property interest in her public employment. The crux of their dispute is whether Steele had authority to terminate Gall's employment.

## *Gall's Position*

Gall contends that only Decker had such authority. She bases her assertion on Mo. Rev. Stat. § 483.245, which provides in relevant part that "[t]he circuit clerk, or person exercising the authority of the circuit clerk pursuant to county charter, shall appoint all deputy circuit clerks" and "prescribe and assign the duties" of those clerks. The statute also gives the circuit clerk authority to "remove from office any deputy circuit clerk whom he appoints."[3]

Gall contends that—in accordance with this statute—Presiding Circuit Judge Steele, Associate Circuit Judge Swaim, and Circuit Clerk Decker entered a March 2008 agreement giving Decker "sole authority" to terminate deputy clerks like her. This agreement, called Agreement for the Consolidation of the Clerical Functions of the Circuit Court of Adair County, Missouri, was intended (among other things) to concentrate supervisory authority for both deputy *circuit* clerks and another type of employee, deputy *division* clerks, in a single person. The 2008 Consolidation Agreement was proper, says Gall, because it also complied with Missouri Supreme Court Rule 50.01, which gives state courts the power to "make rules governing the

---

[3] It also extends termination power to the circuit court acting *en banc*. The statute defines "*en banc*" as including "all circuit and associate circuit judges of the entire circuit," and requires "determinations or orders of the circuit court en banc" to be "by action of a majority of such judges." Mo. Rev. Stat. § 483.245.8. The defendants do not argue that the Second Judicial Circuit *en banc* (which, again, includes not only Adair County but also Knox and Lewis Counties) ever purported to fire Gall.

administration of judicial business if the rules are not inconsistent with the rules of this Court, the Constitution or statutory law in force." Gall contends that this agreement remained in effect until April 2014 (after her termination), when a majority of the judges of the Second Judicial Circuit amended it in order to designate Judge Swaim as the appointing authority.

### *Defendant Steele's Position*[4]

Steele argues that this 2008 agreement was properly amended in 2013, before the incidents that gave rise to this cause of action. He contends that the 2013 amendment vested him with sole supervisory authority.

To explain why the 2013 amendment was valid, Steele first points to a state constitutional provision giving the Supreme Court of Missouri the authority to control and supervise its courts, including the Adair County Circuit Court. *See* Mo. Const. art. V, § 4.1. Pursuant to that power, the Missouri Supreme Court ordered in 2009 that the supervision of deputy circuit clerks and division clerks be consolidated under a single appointing authority for each circuit court. It recognized that certain courts had already voluntarily consolidated. To oversee the consolidation, the Supreme Court assigned the Circuit Court Budget Committee,

---

[4] Judge Swaim, who moved separately to dismiss, did not take a position on the propriety of Steele's actions. She argued only that Eleventh Amendment immunity bars the claim against her.

an entity it had created in 1981 and tasked with the administrative management of circuit court personnel. (Doc. 25-2.)

Under the 2008 Consolidation Agreement between Swaim, Steele, and Decker, the Adair County Circuit Court had already consolidated supervising authority over these two types of clerks. But on May 2, 2013, the judges of the Second Judicial Circuit, purportedly acting *en banc*, submitted an amended plan that designated Steele as the new appointing authority. Steele alone signed that amended plan. (Doc. 25-3.) Gall alleges that Steele did not in fact speak for the *en banc* court, but rather, acted unilaterally.

In a June 2013 letter to Steele, the Budget Committee noted its approval of the modification. (Doc. 25-4.) Shortly thereafter, the Missouri Supreme Court issued an order noting that its 2009 consolidation order had "failed to provide a procedure to modify" the plans of circuit courts that had already consolidated. In the new order, the Court affirmed the Budget Committee's authority to approve modifications. The new order provided that a circuit court acting *en banc* "after consultation with the circuit clerk and other appointing authority, may submit any

proposed revisions to its consolidation plan to the circuit court budget committee for its approval." (Doc. 25-5.)[5]

### *Gall's Response*

Gall responds that the 2013 modification vesting authority in Steele did not comply with the open-meeting and open-vote provisions of the state's Sunshine Law, Mo. Rev. Stat. §§ 610.010 *et seq.*, or Section 483.245, naming the Circuit Clerk as appointing authority. She also argues that a provision of the Missouri Constitution requiring circuit court personnel to be "selected as provided by law" gives authority to the legislature, not the court, to determine how circuit court personnel are appointed and supervised. Mo. Const. art. V, § 15.4. Gall maintains that the Budget Committee's post-hoc approval of the 2013 modification is not entitled to the same deference as administrative orders of the Supreme Court. She characterizes her claim as only a "challenge [] to Steele's implementation of the consolidation order, not to the power of the Supreme Court."

Gall also argues that, notwithstanding its failure to conform to state statutory requirements, the 2013 modification was not properly agreed to. In support of this argument, Gall points to a second modification, promulgated in 2014 and signed by a majority of judges of the Second Judicial Circuit, which acknowledges a

---

[5] The defendants have supplied only an unsigned copy of this order, but Gall has not disputed its authenticity.

continuing dispute about who has supervisory authority over deputy clerks under state law. (Doc. 32-1.) The 2014 amendment vests this authority in yet another party, Judge Swaim. Gall also submits several exhibits, allegedly communications from Judge Swaim and Lewis County Associate Circuit Judge Fred Westhoff, which express grave concern about the validity of the 2013 modification and questioning whether it was really an *en banc* action at all. (Docs. 32-2 and 32-3.)

## II.     Claims and Motions to Dismiss

Based on her termination, Gall has brought suit against Steele and Swaim under 42 U.S.C. § 1983. Gall claims that Steele violated her Fourteenth Amendment procedural due process rights by interfering with her reinstatement. She claims his actions deprived her of her protected property interest in her public employment. Gall has sued Steele in his official and individual capacities and Swaim in her official capacity only, as the current presiding judge of the Second Judicial Circuit. Gall requests reinstatement, back pay, front pay, benefits, attorney fees and costs.

Steele and Swaim have moved to dismiss. Steele argues that Gall has failed to state a due process claim under Rule 12(b)(6), Fed. R. Civ. P., because his actions were either allowed by state law or "random and unauthorized" such that the postdeprivation remedies offered to Gall were adequate. He also argues that,

even if she had stated a claim, he would be protected from the individual-capacity suit by qualified immunity. Both Steele and Swaim also contend that the sovereign immunity exemplified in the Eleventh Amendment protects them from Gall's claims against them in either capacity. I will not determine whether Gall has stated a proper claim for relief or whether immunity would bar her claim because *Pullman* abstention applies.

### III. *Pullman* **Abstention**

Although federal courts have a "virtually unflagging obligation" to exercise their allotted jurisdiction, they may abstain when necessary to preserve "traditional principles of equity, comity, and federalism." *Beavers v. Ark. State Bd. of Dental Examiners*, 151 F.3d 838, 840 (8th Cir. 1998) (quoting *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976) and *Alleghany Corp. v. McCartney*, 896 F.2d 1138, 1142 (8th Cir. 1990)). The Supreme Court recognized one such doctrine of abstention in *Railroad Commission of Texas v. Pullman Co.*, 312 U.S. 496 (1941). *Pullman* abstention is "[d]esigned to avoid federal-court error in deciding state-law questions antecedent to federal constitutional issues." *Arizonans for Official English v. Arizona*, 520 U.S. 43, 76 (1997).

A court must abstain under *Pullman* when a case "involves a potentially controlling issue of state law that is unclear, and the decision of this issue by the state courts could avoid or materially alter the need for a decision on federal constitutional grounds." *Robinson v. City of Omaha, Neb.*, 866 F.2d 1042, 1043 (8th Cir. 1989). When deciding whether *Pullman* applies, the court must consider:

> (1) the effect abstention would have on the rights to be protected by considering the nature of both the right and necessary remedy;
> (2) available state remedies;
> (3) whether the challenged state law is unclear;
> (4) whether the challenged state law is fairly susceptible to an interpretation that would avoid any federal constitutional question; and
> (5) whether abstention will avoid unnecessary federal interference in state operations.

*Beavers*, 151 F.3d at 841; *see also Robinson*, 866 F.2d at 1043 (court may abstain *sua sponte*).

Taking the *Beavers* considerations in reverse order, abstention will avoid unnecessary federal interference in Missouri's administration of its judicial system, a field of paramount importance to a sovereign state. Gall's claim is premised on Steele's alleged failure to comply with the Sunshine Law and state statutes governing the supervision of court personnel, as well as Missouri Supreme Court Rules and potentially the Missouri Constitution. Determining whether Steele was an appropriate appointing authority would require evaluating the validity and scope

of these sources of law, as well as administrative orders promulgated by the Supreme Court of Missouri, the Circuit Court Budget Committee, the Second Judicial Circuit, and Adair County Circuit Court. In short, it would entail assessing – under the state's own laws – the propriety of its procedures for identifying appointing authorities. Under the circumstances, such a probe would not demonstrate the "scrupulous regard for the rightful independence of the state governments" that is required of this court. *Pullman*, 312 U.S. at 501; *George v. Parratt*, 602 F.2d 818, 822 (8th Cir. 1979) (*Pullman* abstention applies where federal intervention would interfere "with state procedures and policies in areas of special state interest"); *see also Lumsden v. Ramsey Cnty. Cmty. Corrs. Dep't*, 2003 WL 221806, at *3 (D. Minn. Jan. 28, 2003) (abstention was proper where plaintiff's asserted right "directly implicate[d] the sensitive, purely state relationship between the state courts and state probation agencies"); *Hughes v. Lipscher*, 906 F.2d 961, 966 (3d Cir. 1990) (municipal clerk challenged New Jersey Supreme Court bulletin forbidding employment of clerk married to police officer on the same municipal force; *Pullman* abstention was appropriate in part because "an erroneous interpretation of the bulletin by the federal courts would undoubtedly have a disruptive effect on an important state policy").

Second, the challenged state laws are fairly susceptible to an interpretation that would avoid the due process question altogether. The Missouri courts could very well determine that, under the Missouri Constitution, the 2013 amendment giving Steele firing authority over Gall was effective. Even if the state courts accept Gall's contention that the amendment was initially improper, they could find that it was rendered valid by the Budget Committee's apparent ratification. Because Gall has staked her claim of inadequate process on the identity of the person offering the process, not the paucity of the process itself, a determination that Steele was the appropriate appointing authority would obviate her procedural due process claim. *Beavers*, 151 F.3d at 841 ("paradigm case" for abstention occurs where state court interpretation would avoid the federal constitutional question); *George*, 602 F.2d at 822 (where state court decision *may* moot plaintiff's constitutional claim, abstention is appropriate even though it is "impossible to forecast" if it would actually do so).

Third, the challenged state laws are unclear. To take just a single example, the Missouri Constitution requires circuit court personnel to be "selected as provided by law." Mo. Const. art. V, § 15.4. This provision is ambiguous when examined in light of two apparently conflicting laws: Mo. Rev. Stat. § 483.245, which seems to endow only each circuit court's Clerk with hiring-and-firing

authority, and the 2009 Missouri Supreme Court administrative order, which seems to give each circuit court the choice of assigning that authority to someone else. The Supreme Court of Missouri has not issued a decision reconciling these sources of law. *See John Chism Bail Bonds, Inc. v. Pennington*, 656 F. Supp. 2d 929, 936 (E.D. Ark. 2009) (controlling Arkansas statute was unclear where its language was ambiguous and state supreme court had not addressed the interpretation advanced by the plaintiff); *Hughes*, 906 F.2d at 965-66 (abstention was appropriate where court administrative order was vague and defendant's proffered interpretation was "not self-evident").

Fourth, Gall has state remedies that could resolve the question of whether Steele was the legal appointing authority. At oral argument held on defendant Steele's earlier motion to dismiss, I asked defense counsel what state-court remedies were available to Gall. Counsel listed as possibilities a writ of prohibition, a declaratory judgment action, or the continuation of her appeal through the governing Missouri Supreme Court Operating Rule.[6] These procedures are adequate alternatives to a federal court action. *See, e.g.*, *George*, 602 F.2d at 820-21; *Beavers*, 151 F.3d at 840 (both accepting declaratory judgment

---

[6] Although the court questioned whether it would be too late to bring her appeal through the Court Operating Rules, defense counsel assured the court that "I know multiple times the defendant has agreed to extend those time limits. That discussion has not taken place recently, but previously the time limits have been extended and I think they would again if she wanted to avail herself of the procedure."

proceeding as available state remedy); Mo. Rev. Stat. § 527.010 *et seq.*

(Declaratory Judgment Act); *State ex rel. Shea v. Bossola*, 827 S.W.2d 722, 724

(Mo. Ct. App. 1992) (writ of prohibition available to prevent public body

exercising quasi-judicial power from acting outside its purview); *Klebba v.

Umstattd*, 388 S.W. 3d 258, 263 (Mo. App. 2012) (writ of prohibition against

appointing authority under Court Operating Rule Seven for unauthorized

termination was not an abuse of discretion by trial court where plaintiff had

exhausted her administrative remedies).

    Finally, as for the first prong of the *Beavers* considerations, the right sought

to be protected and its attendant remedies are particularly apt for abstention in this

case. Federal-court abstention will not have a "chilling effect" on the exercise of

plaintiff's rights because the action complained of is already completed. *George*,

602 F.2d at 820. Further, though Gall seeks reinstatement in addition to damages,

she acknowledges that the "small size of the Circuit Court over which Steele

presides may make reinstatement infeasible or inappropriate, and front pay is

appropriate in lieu of reinstatement." (Second Am. Compl., ¶ 45.) The Eighth

Circuit has held that "abstention may be warranted in actions in which . . . any

deprivation is completely compensable by an award of money." *George*, 602 F.2d

at 820. In other words, this is not a case in which an allegation of ongoing First

Amendment violations or a request for "extraordinary relief" makes abstention inappropriate. *Id.*

## IV. Stay

Although there are exceptions, a stay – rather than a dismissal – is appropriate in most abstention cases. *See Warmus v. Melahn*, 110 F.3d 566, 567 (8th Cir. 1997). Staying the case permits a plaintiff to "either present [her] federal constitutional claims to the state courts or reserve the right to return to the federal court," once the issue of state law is resolved by the state court. *C. R. v. Adams*, 649 F.2d 625, 630 (8th Cir. 1981); *see also England v. La. State Bd. of Medical Examiners*, 375 U.S. 411, 421–22 (1964). As such, I will stay this action for a period of six months to give the parties the opportunity to seek resolution in an appropriate Missouri forum.

Accordingly,

**IT IS HEREBY ORDERED** that defendants' motions to dismiss [#25 and #38] are denied without prejudice for the reasons stated above.

**IT IS FURTHER ORDERED** that plaintiff's motion for leave to file supplemental pleadings [#43] is denied as moot because they related to qualified immunity, an issue not determined here.

**IT IS FURTHER ORDERED** that this action is STAYED for a period of six months so the parties may seek resolution of the state-law issues by a Missouri state court. The parties must file a joint status report on any state-court litigation no later than **July 6, 2015**. The Court will then determine whether to continue the stay or return this case to the Court's active docket.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 6th day of January, 2015.